# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **Tara McCrohan** <br> by assignment on behalf of Massachusetts <br> Coalition of Police, Local #123 <br><br> Plaintiff, <br><br> v. <br><br> **Sandulli Grace, P.C., John Becker, and The Massachusetts Coalition of Police,** <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL ACTION <br><br> NO. 4:18-cv-10945-TSH |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS
## (Docket Nos. 15 & 20)

**March 28, 2019**

**HILLMAN, D.J.**

Tara McCrohan ("Plaintiff") brings claims against Sandulli Grace, P.C. ("Sandulli Grace"), and John Becker, a lawyer for that firm and against Massachusetts Coalition of Police ("MassCOP") (collectively "Defendants"). She alleges that Sandulli Grace and Becker committed legal malpractice (Counts I and II), and that Sandulli Grace is vicariously liable for the malpractice of Becker (Count III). She also alleges violations of Mass. Gen. Laws. ch. 93A, § 1 *et seq.* (Count IV) against Sandulli Grace. In addition, she brings a claim for breach of contract against MassCOP (Count V). All claims are brought by an assignment from Uxbridge Massachusetts Coalition of Police, Local #123 ("Local"). Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, both motions (Docket Nos.15 & 20) are ***denied***.

**Background**

The following facts are taken from Plaintiff's complaint (Docket No. 2) and assumed to be true for the purposes of this motion.

On March 30, 2015, Plaintiff obtained a judgement against Local ("the underlying litigation"). *See McCrohan v. Uxbridge Police Association Local 123*, 253 F. Supp. 3d 385 (D. Mass. 2017). That litigation concerned the publication of a letter by Local in an effort to remove the Uxbridge Chief of Police from office. The letter contained false and defamatory statements about Plaintiff, who was an officer in the department. Local sought MassCOP's approval of the letter prior to its publication. MassCOP told Local to "publish [the letter] if [they thought] it would work in removing the Chief from office." Local also attempted to contact Sandulli Grace regarding the letter, but Sandulli Grace did not respond. After the letter was published, McCrohan brought suit against Local, and Local requested that MassCOP defend and indemnify them, and MassCOP agreed.

John Becker, an attorney at Sandulli Grace, P.C. represented Local in the underlying litigation. MassCOP paid for Sandulli Grace's services and exercised control over Sandulli Grace throughout the underlying litigation. Neither Becker, Sandulli Grace, nor MassCOP informed Local of any conflicts resulting from Sandulli Grace's dual role as counsel for Local and MassCOP. Sandulli Grace did not inform Local of possible third-party contribution or indemnification claims until Local was unable to pursue them. After the verdict, Sandulli Grace filed an appeal on Local's behalf but, at MassCOP's direction, did not pursue it, and dismissed the appeal without consulting Local. In addition, when Local obtained new counsel, Sandulli Grace withheld relevant documents from Local's new attorney.

**Standard of Review**

A defendant may move to dismiss, based on the complaint, for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must … state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (internal citations and quotation marks omitted). The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In evaluating the plausibility of plaintiff's pleading, the court must treat all "non-conclusory factual allegations … as true, even if seemingly incredible." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). While a "paucity of direct evidence is not fatal in the plausibility inquiry", the court may infer a lack of relevant facts if the complaint omits them. *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 49 (1st Cir. 2012); *O'Brien v. DiGrazia*, 544 F.2d 543, 546 (1st Cir. 1976). Determining the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* 129 S. Ct. at 1950.

**Discussion**

*1. Legal Malpractice (Counts I, II, and III)*

Plaintiff claims that Sandulli Grace breached its duty of loyalty and duty to practice law in a reasonably prudent and competent manner. Specifically, Plaintiff alleges that Sandulli Grace failed to properly advise Local of conflicts of interest caused by Sandulli Grace's dual representation of Local and MassCOP, did not inform Local of viable third-party claims, and withheld documents critical to prosecuting those third-party claims.

*a. Judicial Estoppel*

Sandulli Grace argues that Plaintiff's malpractice claims should be judicially estopped because they are inconsistent with her position in the underlying litigation. "Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding." *Blanchette v. School Comm. of Westwood*, 427 Mass. 176, 184, 692 N.E.2d 21 (1998); *see also Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 32–33 (1st Cir. 2004). Judicial estoppel is appropriate where a plaintiff would recover a verdict "that is mutually inconsistent with the judgment [they have] already … obtained." *Otis v. Arbella Mut. Ins. Co.*, 443 Mass. 634, 648, 824 N.E.2d 23 (2005). Sandulli Grace argues that prevailing in the instant litigation requires Plaintiff to argue that Sandulli Grace "should have presented the case differently or pursued an appeal," which is contrary to Plaintiff's success in the underlying litigation. (Docket No. 19, at 6).

"Because of its equitable nature, the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Otis*, 443 Mass. at 640, 824 N.E.2d 23 (internal citations and quotation marks omitted). However, estoppel generally contains "two fundamental … elements: First, the position being asserted … must be 'directly inconsistent,' meaning 'mutually exclusive' of, the position asserted in a prior proceeding … Second, the party must have succeeded in convincing the court to accept its prior position." *Otis* 443 Mass. at 640–41, 824 N.E.2d 23 (quoting *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23 (1st Cir. 2004)). The second factor is clearly satisfied. Plaintiff prevailed in the underlying litigation by convincing the court to accept her prior position.

The first factor, however, is not met here. Plaintiff does not argue she should not have prevailed in the underlying litigation, or that Sandulli Grace should have argued the underlying litigation differently. Local's position, assigned to Plaintiff, is that the MassCOP was jointly and

severally liable with Local for defaming Plaintiff, and that Sandulli Grace failed to adequately advise Local. (Docket No. 26, at 8). A finding that MassCOP was jointly and severally liable for that defamation is not contrary to the underlying judgment. *Cf. Sandman v. McGrath*, 78 Mass. App. Ct. 800, 804-05 (2011) (holding plaintiff was estopped because claim was "directly contrary" to previous claim).

### b. Third-Party Claims

Under Massachusetts law, joint liability exists where "two or more wrongdoers negligently contribute to the personal injury of another … so that in effect the damages suffered are rendered inseparable" *Feneff v. Bos. & M.R.R.,* 196 Mass. 575, 581, 82 N.E. 705 (1907). Where joint liability exists, damages may either be shared amongst the joint tortfeasors through contribution, or one tortfeasor may indemnify the other for damages. Mass. Gen. Laws. ch. 231B, § 1 *et seq*. provides for a right of contribution amongst joint tortfeasors. In addition, a right of indemnification can arise from (1) an express agreement, (2) a contractual right implied by the nature of the relationship between the parties, or (3) "a tort-based right … where there is a great disparity in the fault of the parties." *Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Auth.,* 693 F.2d 1, 2 (1st Cir. 1982). Plaintiff claims Sandulli Grace failed to advise Local of viable claims for contribution or indemnification from MassCOP. (Docket No. 2, at 42). Sandulli Grace asserts that Local had no viable contribution or indemnification claims.

### i.   Contribution

"[W]here two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them." Mass. Gen. Laws. ch. 231B, § 1(a). "The term 'liable in tort,' … is broad in scope and not suitable language for implying a narrow or restricted range of

application within the framework of potential tort defendants." *Wolfe v. Ford Motor Co.*, 386 Mass. 95, 98, 434 N.E.2d 1008 (1982). Mass. Gen. Laws. ch. 231B is meant to remedy "the unfairness of allowing a disproportionate share of the plaintiffs recovery to be borne by one of several joint tortfeasors, and the object to be accomplished was a more equitable distribution of that burden among those liable in tort for the same injury." *LeBlanc v. Logan Hilton Joint Venture*, 463 Mass. 316, 326, 974 N.E.2d 34 (2012).

Sandulli Grace argues that Plaintiff "has failed to plead factual allegations suggesting that [MassCOP] acted with the requisite intent or substantially assisted or encouraged the Local." (Docket No. 19, at 8). Mass. Gen. Laws ch. 231B contains neither an intent nor a substantial assistance or encouragement requirement; these are elements of a civil conspiracy claim. *See, e.g.*, *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1564 (1st Cir. 1994); *Kurker v. Hill*, 44 Mass. App. Ct. 184, 189 (1998). Plaintiff correctly states that civil conspiracy is not a requirement for contribution, however, her pleadings suggest a civil conspiracy claim.[1] Accordingly, I will analyze Plaintiff's claims through that lens.[2]

---

[1] Absent a civil conspiracy, Plaintiff must show MassCOP was directly liable to Plaintiff in order to have a viable contribution claim against MassCOP. "[T]o state a claim for contribution from a joint tort-feasor, the party seeking contribution must show that the potential contributor is directly liable to the tort plaintiff." *Hayes v. CRGE Foxborough, LLC*, 167 F. Supp. 3d 229, 245 (D. Mass. 2016) (internal citations and quotation marks omitted). Plaintiff's allegations do not plausibly suggest a theory by which MassCOP would be directly liable to her. "The elements of a defamation claim include (1) a false and defamatory communication (2) of and concerning the plaintiff which is (3) published or shown to a third party." *Dorn v. Astra USA*, 975 F. Supp. 388, 396 (D. Mass. 1997). Plaintiff does not allege that MassCOP published the letter themselves. Thus, the third prong of the defamation claim would not be met.

[2] Plaintiff argues that MassCOP's is liable because it ratified the letter prior to publication. Ratification is the "confirmation and acceptance of a previous act, thereby making the act valid from the moment it was done." *Ratification*, BLACK'S LAW DICTIONARY (10th ed. 2014). Ratification is primarily a concept of agency law, and frequently involves a principal authorizing an agent's independent action. *See, e.g. Dempsey v. Chambers*, 154 Mass. 330, 333-34, 28 N.E. 279 (1891). There is no allegation that Local was an agent of MassCOP. Under Plaintiff's theory, MassCOP ratified the letter by stating that Local could "publish [the letter] if [they thought] it would work." (Docket No. 2, 14-15). The letter had not been published when MassCOP made this statement, so it is unclear what tort MassCOP would have ratified.

Massachusetts recognizes "two possible causes of action … called civil conspiracy." *Aetna Cas. Sur. Co*, 43 F.3d at 1563. The first requires that a plaintiff "allege that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently." *Id.* Plaintiff does not allege any coercion. The second form of civil conspiracy is "more akin to a theory of common law joint liability in tort." *Id.* at 1564.

> [The k]ey to this cause of action is a defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan. In the tort field, the doctrine appears to be reserved for application to facts which manifest a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result.

*Kurker*, 44 Mass. App. Ct. at 189 (internal citations and quotation marks omitted).

Plaintiff's allegations, that MassCOP reviewed and approved the letter prior to its publication, and that Local would not have published the letter without MassCOP's encouragement, state a plausible claim for civil conspiracy. MassCOP was aware the letter existed, and that Local would not publish it without MassCOP's approval. MassCOP encouraged Local to publish the letter if Local thought "it would work." *See Nelson v. Nason,* 343 Mass. 220, 222, 177 N.E.2d 887 (1961) (finding defendant's deliberate conduct caused another to engage in tortious activity as sufficient to establish conspiracy). Those allegations plausibly suggest a common plan, and encouragement to carry out that plan.

## ii.   Indemnification

Under Massachusetts law, a right of indemnification can arise from (1) an express agreement, (2) a contractual right implied by the nature of the relationship between the parties, or (3) "a tort-based right … where there is a great disparity in the fault of the parties." *Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Auth.,* 693 F.2d 1, 2 (1st Cir. 1982).

Plaintiff alleges MassCOP agreed to indemnify Local in this matter. (Docket No. 2, at 19). Accepting Plaintiff's allegations as true, MassCOP created an express indemnification agreement with Local.[3]

### c. Defenses to Third-Party Claims

#### i. Loss of Viable Third-Party Claims

Sandulli Grace argues that, even if viable third-party claims exist, their actions did not cause Local to lose the right to assert those claims. "Former clients suffer a loss due to an attorney's negligence only if that negligence is shown to have made a difference to the client." *Jernigan v. Giard*, 398 Mass. 721, 723, 500 N.E.2d 806 (1986). The plaintiff "must prove that he probably would have obtained a better result had the attorney exercised adequate skill and care." *Fishman v. Brooks*, 396 Mass. 643, 647, 487 N.E.2d 1377 (1986).

Plaintiff argues that, by failing to adequately inform Local of their third-party claims, Sandulli Grace prevented Local from pursuing those claims. (Docket No. 2, at 23, 32, 35, 37-9, 41). A better result for Local would have been to share joint and several liability with MassCOP. Furthermore, Plaintiff alleges that Sandulli Grace concealed information that would have allowed Local to bring those claims in a timely fashion. (Docket No. 2, at 37, 40-41). Sandulli Grace argues Plaintiff's own pleadings demonstrate Local had sufficient information to bring any viable third-party claims, and therefore Sandulli Grace did not cause Local to lose them. (Docket No. 19, at 10).

In *Mitchell v. Schain, Fursel & Burney, Ltd.*, the court recognized that an attorney might "be held to be a proximate cause of plaintiff's damages where his acts or omissions *leave doubt* about the subsequent viability of plaintiff's claim after his representation ends." 332 Ill. App. 3d

---

[3] Because Plaintiff has alleged a plausible theory of indemnification, I will not address whether it is plausible that a contractual right is implied by the nature of the relationship between the parties.

618, 621 (2002) (emphasis added). Here, there is a question of fact as to whether Sandulli Grace's acts or omissions caused Plaintiff to lose viable claims.

### ii. Statute of Limitations

Under Massachusetts law, an action for a contribution claim must be commenced within one year, regardless of whether a judgment is entered or a settlement is reached. Mass. Gen. Laws. ch. 231B, § 3. Contract actions must "be commenced only within six years." Mass. Gen. Laws ch. 260, § 2. The original judgment against Local was entered on March 30, 2015. Assuming Local had a right of contribution, that claim was viable until March 29, 2016. Sandulli Grace withdrew from representation of Local on February 4, 2016. Local obtained new counsel on March 17, 2016. Sandulli Grace argues that Local's claim fails because Local had viable claims at the time of Sandulli Grace's withdrawal, and therefore Local suffered no damages. *See Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.,* 25 Mass. App. Ct. 107, 111 (1987) (noting damages are a necessary element of a legal malpractice claim).

In *Poly v. Moylan*, the Supreme Judicial Court found no damages where an attorney withdrew from a suit where the suit was still viable. 423 Mass. 141, 148, 667 N.E.2d 250 (1996). The court noted:

> Moylan withdrew with court approval from the action pending in the Superior Court on March 25, 1992. The claim was not dismissed against Janet Gillis until August 1992, and was not dismissed against her husband until November 2, 1993. Therefore, when Moylan withdrew from the case with court permission after notice to the plaintiff, there was still a viable case pending against the Gillises *and it was still possible to proceed with discovery and investigation*.

*Id*. (emphasis added).

The attorney in *Poly* withdrew from an ongoing action five months before the first claim was dismissed, and nearly seven months before the second claim was dismissed. *Id.* By contrast, Sandulli Grace withdrew approximately two months before the contribution claim ceased to be

viable, and Local obtained counsel with only twelve days to file their claim. Plaintiff contends that this was insufficient time to discover and pursue the contribution claim. Plaintiff further contends that Sandulli Grace concealed relevant documents that would have established a contribution claim. Sandulli Grace argues that Local had the information necessary to bring a contribution claim and that Sandulli Grace's actions did not prevent Local from doing so.

Under Massachusetts law, the statute of limitations may be tolled in cases where the harm was either inherently unknowable or fraudulently concealed. *First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.,* 717 F. Supp. 2d 156, 160 (D. Mass. 2010).

> A wrong is inherently unknowable if it is incapable of detection through the exercise of reasonable diligence. Ascertaining reasonable diligence is generally a fact-dominated enterprise and, in most circumstances, a determination of when a plaintiff knew or should have known of its cause of action is one that ... will be decided by the trier of fact.

*Id*. (internal citations and quotation marks omitted).

Thus, if Local was aware of the existence of the claim, then the statute of limitations expired in March of 2016. If that was the case, and Sandulli Grace prevented Local from timely pursuing their claim, that may constitute malpractice. If, however, Local was unaware of the existence of the claim, then the statute of limitations would have tolled, and Local would have continued to have a viable contribution claim. The question of reasonable diligence is fact dependent and not appropriate for resolution at this stage.

*iii. Missed Settlement Opportunities*

Plaintiff's "burden in the malpractice action [is] to prove that he lost the financial benefits that he would have received had he accepted the … offer." *Shimer v. Foley, Hoag & Eliot LLP*, 59 Mass. App. Ct. 302, 309 (2003). Plaintiff alleges Local refused to settle the underlying case prior to trial due to Sandulli Grace's failure to adequately advise them of them of the risks to Local and

its members. (Docket No. 2, at 42). Further, Local was unaware its members could be held personally liable, and Sandulli Grace concealed viable third-party claims. (Docket No. 2, at 28, 35, 41).

In *Shimer*, the plaintiff argued he would have accepted an offer of employment if his attorneys had not concealed relevant information regarding the likely disposition of his case. *Id.* at 303. Because "the issue was less clear than [defendants] had led him to believe," Shimer "was unable to assess the risks associated with further litigation compared to the benefits connected to [the] offer." *Id.* at 305. As a result, Shimer continued to litigate his case, incurred substantial expenses, and eventually lost on summary judgment. *Id*. at 304. Shimer then brought a malpractice suit against his counsel for failure to properly advise him.

Sandulli Grace argues that *Shimer* requires that Plaintiff provide factual allegations that plausibly suggest an actual settlement offer existed, but this overstates *Shimer*. The gravamen of Shimer's complaint was that there was an offer which he would have accepted if not for his attorney's negligent actions. *Shimer*, 59 Mass. App. Ct. at 309. "Proof of the underlying offer … was integral to [Shimer's] malpractice claim," and thus, necessary for him to prove his allegations of malpractice. *Id.* The *Shimer* court did not address the question of whether or not allegations of the existence of a contract were necessary in order to establish a plausible claim. *Shimer*'s evidentiary requirements may be relevant later, but they do not show that Plaintiff has failed to state a plausible claim.

Sandulli Grace correctly states that the burden of proof for a plaintiff in a malpractice claim is a high one. However, such proof is not necessary at this stage. *See Grajales*, 682 F.3d at 49 (noting "paucity of direct evidence is not fatal in the plausibility inquiry"). While Plaintiff does

not provide details of a settlement offer, it is plausible that, armed with a more complete set of facts, Local might have settled with McCrohan.

2. *Violations of Mass. Gen. Laws. ch. 93A (Count IV)*

Sandulli Grace argues that Plaintiff's claims under Mass. Gen. Laws. ch. 93A cannot survive absent a legal malpractice claim. *See, e.g., Darviris v. Petros*, 442 Mass. 274, 278, 812 N.E.2d 1188 (2004) (noting "mere negligence" insufficient for liability under Mass. Gen. Laws. ch. 93A); *Klairmont v. Gainsboro Rest., Inc.,* 465 Mass. 165, 176, 987 N.E.2d 1247 (2013) (noting "negligent act or acts, alone, do not violate c. 93A"). Because Plaintiff's legal malpractice claims will not be dismissed, her claims under Mass. Gen. Laws. ch. 93A survive as well.

3. *Breach of Contract by MassCOP (Count V)*

*a. Lack of Consideration*

"In order adequately to plead a claim for breach of contract under Massachusetts law, a plaintiff is required to allege that 1) there was a valid contract, 2) the defendant breached its duties under the contractual agreement and 3) the breach caused the plaintiff damage." *NExTT Sols., LLC v. XOS Techs., Inc.*, 113 F. Supp. 3d 450, 456 (D. Mass. 2015). "A contract must have consideration to be enforceable and [i]n order for a contract to have valid consideration, the contract must be a bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor." *Neuhoff v. Marvin Lumber & Cedar Co.,* 370 F.3d 197, 201 (1st Cir. 2004) (internal citations and quotation marks omitted); s*ee also Stagikas v. Saxon Mortg. Servs., Inc.*, 795 F. Supp. 2d 129, 136 (D. Mass. 2011); *Marine Contractors Co. v. Hurley*, 365 Mass. 280, 286, 310 N.E.2d 915 (1974) ("The requirement of consideration is satisfied if there is either a benefit to the promisor or a detriment to the promisee."). Plaintiff claims that Local and MassCOP established a contractual relationship for MassCOP to provide legal defense for Local.

(Docket No. 2, at 19, 65). MassCOP argues that Plaintiff has failed to allege the existence of any consideration in support of this contract. Instead, MassCOP asserts that the offered defense was a unilateral promise and, as such, not an enforceable contract. MassCOP further argues that because Local "assuredly [knew] whether it provided anything to MassCOP in exchange for its promise to defend Local," Plaintiff should know what consideration was exchanged. (Docket No. 33, at 2).

Plaintiff argues that the form of consideration is "evidence that can only be obtained by discovery." (Docket No. 27, at 8). Plaintiff was not a party to the alleged contract; she brings her claims by assignment from Local. Local may know what consideration was given, but it does not follow that Local's knowledge was imputed to Plaintiff. "[C]ourts have recognized that relaxation of pleading requirements is permitted where information is in a defendant's sole possession." *In re Pharm. Indust. Average Wholesale Price Litig.,* 307 F. Supp. 2d 196, 206 (D. Mass. 2004); s*ee also Jellyman v. City of Worcester*, 354 F. Supp. 3d 95, 100 (D. Mass. 2019) (noting discovery appropriate where information is in sole possession of defendants). Other than Local, MassCOP is the only party that possesses knowledge of the alleged contract. I find that it is plausible that a contract existed between MassCOP and Local for MassCOP to provide for Local's legal defense, and discovery is required to determine the nature of the consideration exchanged.

### b. Pro Rata Payment

Mass. Gen. Laws. ch. 231B, § 1(b) provides that the "right of contribution shall exist only in favor of a joint tortfeasor … who has paid *more than his pro rata share* of the common liability, and his total recovery shall be limited to the amount paid by him in excess of his pro rata share." (emphasis added) "A tortfeasor must … satisfy different procedural requirements in cases where judgment enters against the tortfeasor, Mass. Gen. L. ch. 231B, § 3(c), and in cases where the tortfeasor settles with the injured party, Mass. Gen. L. ch. 231B, § 3(d)." *Med. Prof'l Mut. Ins. Co.*

*v. Breon Labs., Inc.,* 966 F. Supp. 120, 122 (D. Mass. 1997). Further, in order to proceed with a contribution claim, the tortfeasor must at least pay its own pro rata share of the judgement. *Spirito v. Hyster New England, Inc.,* 70 Mass. App. Ct. 902, 903, 872 N.E.2d 1160, 1162 (2007); s*ee also Shantigar Found. v. Bear Mountain Builders*, 441 Mass. 131, 141, 804 N.E.2d 324, 332 (2004). MassCOP argues that, since Local did not pay its pro rata share of the judgment, no viable contribution claim existed. (Docket No. 21, at 17).

Mass. Gen. L. c 231B, § 3 sets forth several procedures for enforcement of contribution claims which depend upon whether or not a judgment has been entered, how many tortfeasors have had judgments entered against them, and the nature of any settlement agreement. While MassCOP is correct that Local never paid its pro rata share of the original judgment, it is plausible that Local had a viable contribution claim which they were prevented from pursuing.

## Conclusion

For the reasons stated above, Sandulli Grace's motion to dismiss (Docket No.15) is ***denied***. In addition, MassCOP's motion to dismiss (Docket No. 20) is ***denied***.

**SO ORDERED**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**U.S. DISTRICT JUDGE**